## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LAKECIA G. o/b/o J.M.S.,      )
                              )
            Plaintiff,        )
                              )
     v.                       )        1:22CV1129
                              )
KILOLO KIJAKAZI,              )
Acting Commissioner of        )
Social Security,              )
                              )
            Defendant.        )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Lakecia G., brought this action on behalf of J.M.S., her minor child, pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), determining that J.M.S had countable resources that rendered him ineligible for Child Supplemental Security Income ("CSSI") beginning on March 1, 2015. (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 9 (Plaintiff's Brief); Docket Entry 11 (Commissioner's Brief); see also Docket Entry 12 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for the Commissioner.

# I. PROCEDURAL HISTORY

"[J.M.S.] became eligible to receive [C]SSI benefits on November 1, 2005." (Tr. 131.) On April 7, 2017, the SSA sent Plaintiff a notice (Tr. 67-100) advising her that J.M.S. "ha[d] countable resources worth more than $2000.00" (Tr. 67) and thus stopped qualifying for CSSI as of March 1, 2015 (see id.). Following denial of a challenge to that determination at the reconsideration level (Tr. 101, 103-05), Plaintiff sought a hearing before an ALJ (Tr. 106). Plaintiff, J.M.S., and their attorney attended the hearing. (Tr. 21-52.) The ALJ thereafter ruled that, (1) "[d]uring the period of eligibility, [J.M.S.] had countable resources that . . . [rendered him] ineligible for . . . [C]SSI benefits from March 1, 2015 to April 1, 2017" (Tr. 131 (bold font omitted)), (2) "[J.M.S. wa]s liable for the amount of $1.00" due to "overpayment" of past CSSI benefits (Tr. 134), and (3) J.M.S.'s case warranted "remand[] . . . to the appropriate Field Office[] . . . [for] a full review of [J.M.S.'s] resources" (id.).

The Appeals Council subsequently issued Plaintiff a notice (Tr. 156-59) granting her request for review (see Tr. Tr. 156; see also Tr. 137-41 (Plaintiff's request for review)), and advising Plaintiff that the Appeals Council "w[ould] affirm the [ALJ's] findings related to [J.M.S.'s in]eligibility for [CSSI]" but, because "[t]he issue of overpayment was not yet before the [ALJ,]" would "refer [J.M.S.'s] case to [his] servicing field office for a

2

determination of the amount of overpayment and who [wa]s liable to repay it" (Tr. 157).  In that notice, the Appeals Council informed Plaintiff that it "w[ould] not act for 30 days" (id. (bold font and initial caps omitted)), and that Plaintiff could "send [the Appeals Council] a statement about the facts and the law in [J.M.S.'s] case or additional evidence within 30 days of the date of [the notice]" (id.).  Plaintiff's attorney submitted contentions to the Appeals Council (Tr. 161-62), but did not submit any additional evidence (see id.).  The Appeals Council then issued a decision in accordance with its prior notice (Tr. 1-10), "vacat[ing] the [ALJ]'s findings concerning [J.M.S.'s] overpayment and liability for that overpayment," but "adopt[ing] the [ALJ]'s finding that [J.M.S.] had countable resources that . . . reduced the amount of [C]SSI benefits from March 1, 2015 to April 1, 2017" (Tr. 5).  That ruling constituted "the final decision of the Commissioner" (Tr. 1) for purposes of judicial review.

## II. FACTUAL BACKGROUND

On September 29, 2005, in Florence, South Carolina, a car struck J.M.S. (aged 5) in his front yard resulting in a traumatic brain injury and scoliosis, as well as necessitating the placement of a gastrostomy tube, two rods in his spine, and two metal plates in his femurs.  (See Tr. 27-28, 57.)  During the relevant time period in this case, J.M.S. remained in a wheelchair and unable to

3

communicate, and relied on both supplemental oxygen and a gastrostomy tube. (See Tr. 28-29.)

After the driver's liability insurance carrier "paid her coverage" (Tr. 58 n.1),[1] a judge in the Florence County Probate Court approved a settlement for $25,000 between J.M.S. and the driver's underinsured motorist insurance ("UIM") carrier on April 12, 2006 (Tr. 57-59). The order approving the settlement provided that, "after payment of the contracted legal fee and other expenses, [Plaintiff as] Conservator shall hold and maintain all proceeds for the benefit of [J.M.S.] until [he] attains the age of majority." (Tr. 59 (emphasis added).) Shortly thereafter, the Probate Court issued an order appointing Plaintiff as Conservator and providing the following restrictions with regards to J.M.S.'s settlement proceeds:

> The [C]onservator shall not pay compensation to []
> herself from assets of the estate without [c]ourt
> approval. Further the Conservator may not change the
> character of [the] estate without court approval and
> shall expend the assets of [J.M.S.] only pursuant to
> court order.

(Tr. 60 (emphasis added).) On the same date, the Probate Court approved a "Restricted Account Agreement" (Tr. 60-61 (all caps font omitted)), in which Plaintiff as Conservator agreed to deposit

---

[1] The record does not contain information regarding the amount of the payment from the driver's liability insurance carrier (see Tr. 58 n.1), but Plaintiff testified that she did not receive any of those proceeds because her former attorney "stole all of the settlement" as well as settlement proceeds "from a lot of [the attorney's other] clients" and then "committed suicide." (Tr. 47.)

4

J.M.S.'s net settlement proceeds of $15,797.67 into a restricted
bank account, and "that any withdrawal from the account[] shall be
allowed only upon certified Order of the Probate Court authorizing
a specific withdrawal for a specific amount at a specific time or
pursuant to a budget which has been pre-approved by the [Probate]
Court" (Tr. 61 (emphasis added)). "Notwithstanding th[os]e
restrictions . . ., [Plaintiff as C]onservator [wa]s permitted to:
(a) transfer funds from a savings account to a Certificate of
Deposit [('CD')], or (b) renew an existing [CD], or (c) transfer
funds to other federally insured assets[,] so long as the assets
[we]re invested with the same [f]inancial [i]nstitution[, we]re
held in the name of [Plaintiff] as Conservator for [J.M.S.,] and
[we]re subject to the withdrawal restrictions set forth above."
(Id. (emphasis added).)

The record reflects that Plaintiff petitioned the Probate
Court three times to approve expenditures on J.M.S.'s behalf. (Tr.
63-65.)  On November 15, 2006, Plaintiff petitioned the Probate
Court for $1,180.00 from the restricted account to purchase a
computer for J.M.S., which the Probate Court approved the same day.
(Tr. 63.)  On July 23, 2008, Plaintiff petitioned to transfer
$10,000.00 from the restricted account to a CD, which "w[ould] also
have [the] restriction of no withdrawals without prior written
order of the Florence County Probate Court" (Tr. 64 (all caps font
omitted) (emphasis added)), and which the Probate Court approved

the same date (see id.).  Plaintiff's third and final petition occurred on June 16, 2010 (Tr. 65-66), when the Probate Court approved Plaintiff's request for $301.00 to purchase a bubble mattress for J.M.S. on the date Plaintiff submitted the petition (see Tr. 65).

### III.  DISCUSSION

Federal law "authorizes judicial review of the Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of

6

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant [qualifies for benefits], the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is [qualified for benefits], but whether the ALJ's finding that [the claimant] is not [so qualified] is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

## B. Assignment of Error

In Plaintiff's first and only issue on review, she argues that "[t]he ALJ failed to develop the record adequately[ and] . . . then erred by finding [J.M.S.'s CD] was a liquid asset within the

7

meaning of the regulations, rulings, and program guidance."
(Docket Entry 9 at 9 (bold font and single-spacing omitted); see
also Docket Entry 12 at 1-8.)  In particular, Plaintiff contends
that "the ALJ lacked a complete record regarding the CD held at the
Carolina Trust F[ederal] Credit Union ('CTFCU')" (id. at 12)
because, "[w]ithout the actual financial instrument, the ALJ could
not determine" (1) whether the CD "'prohibit[ed] early withdrawal
altogether'" (id. at 14 (quoting Programs Operations Manual System
("POMS") SI 01140.210(A)(3))), or (2) "what the penalty was for
early withdrawal" (id. at 15).  Plaintiff additionally asserts that
the ALJ erred by finding that the CD constituted a liquid resource,
because "[t]here [wa]s no requirement that the [Probate] Court
grant permission to [Plaintiff] to spend any of the funds[, a]nd
even if the [Probate] Court did grant permission, it c[ould] take
up to 30 days to approve any request."  (Id. at 13 (citation
omitted).)  Plaintiff further maintains that the language in the
Restricted Account Agreement that "any withdrawal . . . shall be
allowed only upon certified Order of the Probate Court" (Tr. 61)
"rebuts the assumption [of the funds'] availability for [J.M.S.'s]
support and maintenance," (id. at 12 (citing POMS SI
01140.215(b)(1), (2))).  For the following reasons, Plaintiff's
contentions lack merit.

1. **ALJ's Duty to Develop the Record**

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173-74 (4th Cir. 1986) (emphasis added) (citations omitted). The ALJ discharges his duty to develop the record where "the record is adequate to make a determination regarding a disability claim." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000); accord Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009). Accordingly, in order to demonstrate that the ALJ failed to develop the record, a claimant must show that "evidentiary gaps" existed that prejudiced his or her rights, Blankenship v. Astrue, No. 3:11CV5, 2012 WL 259952, at *13 (S.D.W. Va. Jan. 27. 2012) (unpublished) (citing Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)), and that he or she "could and would have adduced evidence that might have altered the result,'" id. (quoting Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000)). Plaintiff cannot meet that burden for the following three reasons.

First, despite an extensive discussion during the hearing regarding whether Plaintiff needed the Probate Court's approval to access funds in the CD (see Tr. 33-45), Plaintiff's counsel failed to raise (let alone object to) the fact that the record contained neither a copy of the CD instrument itself nor any information

9

regarding the CD's early withdrawal and penalty provisions (see Tr. 24-51).  Indeed, Plaintiff's counsel (A) affirmed that he had no objections to the exhibits in the record (see Tr. 24), (B) made no argument about the CD's early withdrawal and penalty provisions, focusing instead on the Probate Court judge's statement that the Probate Court's approval of petitions for expenditure from the restricted account could take up to 30 days (Tr. 124), thus rendering the restricted account's funds nonliquid (see Tr. 26-27), and (C) did not request that the ALJ hold the record open for either submission of the CD evidence or post-hearing arguments regarding the CD's withdrawal and penalty provisions (see Tr. 51-52).[2]

Second, Plaintiff also failed to raise the issue of the CD's early withdrawal and penalty provisions while the Appeals Council reviewed her case.  (See Tr. 137-41, 160-62.)  Significantly, the Appeals Council, in granting Plaintiff's request for review, specifically informed her that she had the right to (1) submit additional evidence (see Tr. 157) that qualified as "new, material,

---

[2] Moreover, as the Commissioner points out, Plaintiff's testimony "confirms that withdrawals [from the CD] were permitted, so long as she obtained a court order[.]" (Docket Entry 11 at 17 (emphasis in original) (citing Tr. 37 (ALJ: "[A]s you sit here today there's a CD for $10,000 in an account that you're the conservator of.  Can you close out that account?"  PLAINTIFF: "Not without going through the courts."), 38 (PLAINTIFF: "Even the banks told me that I cannot like just get money out of [the CD] unless I have a court order[.]"), 41 (ALJ: "[I]f you wanted to get the money how would you get that CD out of the bank?"  PLAINTIFF: "I have to go through the South Carolina court."); see also Tr. 40 (PLAINTIFF: "[W]hat I'm saying is the CD, they told me it was his account and I have to have approval to get any money out of there.  I would have to go through the court to get approved.")).

[] relate[d] to the period on or before the date of the [ALJ's] hearing decision[, and showed] . . . a reasonable probability that the additional evidence would change the outcome of the decision[ and] . . . good cause for why [she] missed informing [the SSA] about or submitting [the evidence] earlier" (Tr. 156), and (2) ask for an appearance before the Appeals Council to tell [it] about [her] case" (Tr. 157). In response to that notice from the Appeals Council, Plaintiff's counsel did not submit additional evidence, request oral argument before the Appeals Council, or make any arguments about the CD's early withdrawal and penalty provisions. (See Tr. 161-62.) If Plaintiff's counsel believed that the CD's early withdrawal and penalty provisions would render the funds in the CD non-countable resources, he should have submitted supporting argument and evidence to the Appeals Council, but failed to do so. (See Tr. 137-41, 160-62.)

Third, Plaintiff failed to submit a copy of the CD instrument or other evidence regarding the CD's early withdrawal and penalty provisions to this Court. Sentence six of Section 405(g) provides that "[a federal district court] may at any time order additional evidence to be taken before the Commissioner [ ], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding," 42 U.S.C. § 405(g). See Shalala v. Schaefer, 509 U.S. 292, 297 n.2 (1993) ("Sentence-six remands may

11

be ordered . . . where new, material evidence is adduced that was for good cause not presented before the agency." (citations omitted)).   Plaintiff has not alleged that she experienced difficulty in obtaining a copy of the CD or otherwise explained why she needed the assistance of the ALJ to obtain a copy of a financial instrument titled in her name, particularly given the fact that she remained represented throughout the appeals process in this matter.  (See Docket Entries 9, 12.)

As a result of the failure of Plaintiff's counsel to raise any issue regarding the CD's early withdrawal and penalty provisions before the ALJ, or to submit evidence of those provisions to the ALJ, Appeals Council, or this Court, Plaintiff has waived her right to contend, in this Court, that the ALJ failed to fulfill his duty to develop the record because he did not obtain a copy of the CD instrument or otherwise investigate the CD's early withdrawal and penalty provisions.  See Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (holding the claimant's failure to raise issue before ALJ "waived [the claim] from being raised on appeal"); Stepinski v. Astrue, No. CA 11-183, 2012 WL 3866678, at *9–10 (D.R.I. Aug. 6, 2012) (unpublished) ("The [c]ourt views unfavorably the silence of [the

12

p]laintiff's counsel at the hearing regarding the omission about which he now complains. Reversal and remand . . . would encourage other counsel to remain silent in similar circumstances.  This [c]ourt is disinclined to provide such an incentive[ ] . . . [and] finds that [the p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)), <u>recommendation adopted</u>, 2012 WL 3863812 (D.R.I. Sept. 5, 2012) (unpublished).

The Commissioner contends that "the Court need not reach" Plaintiff's argument that "the $10,000 in the [CD does not constitute] a 'liquid' resource" (Docket Entry 11 at 16 (quoting Docket Entry 9 at 4)), because "the funds in the [r]estricted [a]ccount outside the [CD] total approximately $4,316, and therefore standing alone exceed the statutory $2,000 threshold for [C]SSI benefits eligibility" (<u>id.</u>; <u>see also</u> <u>id.</u> n.8 (explaining that restricted account initially received settlement proceeds of $15,797.67, but then Plaintiff withdrew $1,180 for computer, $10,000 for CD, and $301 for mattress, "leaving approximately $4,316.67 in the [restricted] account")). Plaintiff dismisses that argument as an "impermissible post hoc rationalization[]" (Docket Entry 12 at 6 (bolding and italics omitted)), noting that "'principles of administrative law require the ALJ to rationally articulate the grounds for [his] decision and confine [the court's] review to the reasons supplied by the ALJ" (<u>id.</u> (quoting <u>Steele v. Barnhart</u>, 290 F.3d 936, 941 (7th Cir. 2002) (in turn citing <u>SEC v.</u>

13

Chenery Corp., 318 U.S. 80, 93-95 (1943)))). In Plaintiff's view, "[t]he ALJ did not find the [r]estricted [a]ccount outside of the CD alone exceeded the statutory threshold." (Id. at 7.)[3]

The Court may not consider post-hoc rationalizations for the Appeals Council's decision-making. See Radford v. Colvin, 734 F.3d 288, 294 (4th Cir. 2013) (rejecting Commissioner's argument in part because it consisted of "a post[-]hoc rationalization" (citing Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155 (2012))); Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the [ALJ] may have been thinking." (citing Chenery Corp., 332 U.S. at 196)).

The Appeals Council found that (1) "[f]unds in the amount of $15,797.67 were deposited on [J.M.S.]'s behalf . . . in [the restricted] account" (Tr. 6 (emphasis added)), (2) Plaintiff made "expenditures from th[at] account . . . for a computer in 2006, a special mattress in 2010, and a $10,000 transfer to a [CD] . . . in

---

[3] Plaintiff challenges the ALJ's analysis and findings (see Docket Entry 9 at 11-16; see also Docket Entry 12 at 1-8); however, the Appeals Council granted review (Tr. 156-59) and issued its own, final decision in this matter (Tr. 1-10). Although the Appeals Council did adopt the ALJ's findings regarding the countability of J.M.S.'s funds in the restricted account (see Tr. 5), in so doing, the Appeals Council provided its own analysis (see Tr. 6-7). Accordingly, the undersigned will focus on the Appeals Council's decision in reviewing for substantial evidence and legal error.

2008" (Tr. 7 (emphasis added)), and (3) "the _funds_ in the [restricted] account are liquid funds" (_id._ (emphasis added)). Thus, because the Appeals Council found that _all_ of the funds in the restricted account ($15,797.67) constituted a countable resource, the Court can permissibly infer, without engaging in post hoc rationalization, that the Appeals Council found that _any_ funds in the restricted account exceeding $2,000.00, _whether inside or outside of the CD_, constituted countable, excess resources. Accordingly, even if, _arguendo_, the ALJ should have verified the CD's early withdrawal and penalty provisions, and even if, _arguendo_, those provisions would have shown that Plaintiff could not access the $10,000 in the CD or that the penalty would drop the CD's balance significantly, Plaintiff still could not show that the restricted account lacked funds exceeding the $2,000.00 threshold.

In sum, Plaintiff has shown neither that the ALJ failed to fulfill his duty to develop the record, nor that any such failure on the ALJ's part, if it had occurred, prejudiced her case.

**2.** **Funds in Restricted Account as a Countable Resource**

"The [SSI] Program provides need-based financial assistance to aged, blind, and disabled persons who" meet specific income and resource limits. _Craig_, 76 F.3d at 589 n.1. An unmarried claimant such as J.M.S. may not receive CSSI benefits if his countable resources exceed $2,000.00. _See_ 42 U.S.C. § 1382(a)(3)(B). Resources include "cash or other liquid assets or any real or

15

personal property that an individual . . . owns and could convert to cash to be used for his . . . support and maintenance." 20 C.F.R. § 416.1201(a); see also 20 C.F.R. § 416.1208(a) ("Funds held in a financial institution account (including savings, checking, and [CDs]) are an individual's resource if the individual owns the account and can use the funds for his or her support and maintenance." (emphasis added)). In turn, "[l]iquid resources are cash or other property which can be converted to cash within 20 days, excluding certain nonwork days as explained in [20 C.F.R.] § 416.120(d). Examples of resources that are ordinarily liquid are stocks, bonds, mutual fund shares, promissory notes, mortgages, life insurance policies, [and] financial institution accounts (including savings, checking, and [CDs]) . . . ." 20 C.F.R. § 416.1201(b) (emphasis added).[4]

The Appeals Council provided the following analysis to support its finding that the funds in the restricted account constituted liquid funds:

> During the hearing and in the contentions submitted on October 22, 2019, [Plaintiff]'s representative argued that [Plaintiff]'s [restricted] account . . . should not be counted as a liquid asset. He argued that 20 CFR 416.1201 states that in order to be considered a liquid asset, if [sic] it can be converted to cash within 20 days, and that the letter from [the] Probate [Court]

---

[4] The regulation in question defines a "nonwork day" as "a Saturday, Sunday, or Federal legal holiday or [] any other day all or part of which is declared to be a nonworkday for Federal employees by statute or Executive Order." 20 C.F.R. § 416.120.

16

> Judge [] states that in order to liquidate any funds from such an account, a petition must be filed and approved, and that approval can take "up to" 30 days.
>
> [Plaintiff] has provided documentation showing examples of expenditure made from th[e restricted] account on [J.M.S.'s] behalf, for a computer in 2006, a special mattress in 2010, and a $10,000.00 transfer to a [CD] held as directed by the original agreement . . . in 2008. While the [Probate Court J]udge['s ] letter states that an approval for a petition to liquidate any funds from such an account can take "up to" 30 days, [the Appeals Council] observe[s] that each of the three previous occasions when a request was made by [Plaintiff] for disbursement of funds from [J.M.S.'s] account, the request was approved on the same day that it was filed. Therefore, the Appeals Council finds the funds in the [restricted] account with [CTFCU] are liquid funds.

(Tr. 7 (internal parenthetical citations omitted).)

As an initial matter, the parties disagree regarding whether the ALJ correctly found that the CD constituted "cash" as opposed to "other property which can be converted to cash within 20 days" within the meaning of the applicable regulation. See 20 C.F.R. § 416.1201(b). The Commissioner contends that "the ALJ concluded that the funds in [r]estricted [a]ccount '[we]re cash' (Tr. 134), a finding [Plaintiff] d[id] not challenge (Docket Entry 11 at 14) and, thus, that "the 20-day conversion requirement in [20 C.F.R. §] 416.1201(b) [wa]s not relevant because it does not apply to cash" (id.) In reply, Plaintiff maintains that "[her] entire challenge is to whether the ALJ erred by finding the CD a 'liquid resource' of which cash is but one example" (Docket Entry 12 at 5 (citing Docket Entry 9 at 9-10)), and asserts that "[t]he ALJ's

17

determination that the CD was 'cash' is unsupported by the record," because "'the plain and ordinary meaning of cash is money or its equivalent such as currency or coins'" (<u>id.</u> (quoting <u>Huashan Zang v. United States Citizenship & Immigration Servs.</u>, 344 F. Supp. 3d 32, 47 (D.D.C. 2018))).

The SSA's POMS provision regarding "Resources Assumed to be Liquid" provides helpful guidance on this matter. POMS SI 01110.305.[5] That provision begins with the statements that "[c]ash is **always** liquid," and that "certain <u>noncash</u> items are nearly always liquid." <u>Id.</u> (bolding in original) (underscoring added). Immediately underneath those statements, that POMS section states that, "[<u>a]bsent evidence to the contrary</u>, [the SSA] <u>assume[s]</u> that the following types of resources are liquid: . . . checking and <u>savings accounts</u> and [<u>CDs</u>.]" <u>Id.</u> (emphasis added). Reading those statements together strongly suggests that the SSA would categorize J.M.S.'s restricted account and his CD as "noncash items," <u>id.</u>, which would qualify as "other property" and not "cash" under Section 416.1201(b). Thus, Plaintiff must have possessed with ability to convert the funds in the restricted account (including the CD) "to cash within 20 days, excluding [] nonwork days," 20

---

[5] "Although the POMS is not published in the Federal Register, and does not have the force of law, it is entitled to [consideration as] persuasive authority." <u>Frerks by Frerks v. Shalala</u>, 848 F. Supp. 340, 350 (E.D.N.Y. 1994).

C.F.R. § 416.1201(b), for those funds to qualify as a countable resource.

Plaintiff first asserts that the ALJ erred by finding that the funds in J.M.S.'s restricted account (including the CD) constituted a liquid resource, because "[t]here [wa]s no requirement that the [Probate] Court grant permission to [Plaintiff] to spend any of the funds[, a]nd even if the [Probate] Court did grant permission, it c[ould] take up to 30 days to approve any request." (Docket Entry 9 at 13 (citation omitted) (citing Allen v. Berryhill, 333 F. Supp. 3d 1280, 1297 (N.D. Ala. 2018)).) In support of that assertion, Plaintiff points to the following language in a letter from a Florence County Probate Court judge responding to a request from Plaintiff's attorney that the judge "expla[in] the process for a [c]ourt[-]appointed Conservator of a Protected Person to access funds held by such Conservator for needs of the Protected Person" (Tr. 124):

> Upon consideration by the [Probate] Court and a finding that the expenditures are in the best interest of the Protected Person, the [Probate] Court *may* give permission to the Conservator to expend funds for this specific need. This process may take up to 30 days.

(Docket Entry 9 at 13 (quoting Tr. 124) (emphasis added by Plaintiff).) In Plaintiff's view, "[t]he ALJ simply assumed the Probate Court would grant [Plaintiff]'s request to withdraw funds from the [CD]." (Id. (citing Wilson v. Califano, 617 F.2d 1050, 1054 (4th Cir. 1980), for proposition that "[i]t is manifestly

19

unfair for the ALJ to rely on assumptions and 'facts' which the claimant cannot, without reading the ALJ's mind, test or rebut").)

Contrary to Plaintiff's arguments (see Docket Entry 9 at 13; see also Docket Entry 12 at 5-6), the fact that the Restricted Account Agreement required her to petition the Probate Court to access funds on J.M.S.'s behalf does not, standing alone, preclude a finding that the restricted account constituted a countable resource. As the POMS instructs:

> The fact that an individual or his or her agent must petition the court for withdrawal of funds does **not** mean that the funds may be assumed to be unavailable for the individual's support and maintenance (and, therefore, not a resource for SSI purposes).

POMS SI 01140.215 (bolding in original); see also Frerks v. Shalala, 52 F.3d 412, 414 (2d Cir. 1995) ("[T]he fact that [the minor's guardian] may neither draw on nor dispose of the funds at will does not negate the fact that funds can be released and used for [the minor's] support and maintenance as the need arises.").

Indeed, the POMS makes clear that adjudicators should first look to state law to determine whether a conservatorship account such as J.M.S.'s restricted account remains available for J.M.S.'s support and maintenance:

> If [s]tate law requires that funds in a conservatorship account be made available for the care and maintenance of an individual, [the SSA] assume[s], absent evidence to the contrary, that funds in such an account are available for the individual's support and maintenance and are, therefore, that individual's resource.

20

> . . . Field office (FO) adjudicators should follow
> regional instructions regarding availability presumptions
> that apply in those [s]tates.

POMS SI 01140.215(B)(1) (emphasis added). "Evidence to the contrary" includes "restrictive language in the court order that established the account or in a subsequent court order; state or local procedural rules for the withdrawal of funds from the account; and local court practices regarding withdrawal of funds." POMS SI 01140.215(B)(2).

Here, Plaintiff concedes that South Carolina law in effect during the relevant time permitted Plaintiff to "'expend or distribute sums from the principal of the estate without court authorization or confirmation for the <u>support, education, care, or benefit</u> of the protected person.'" (Docket Entry 9 at 12 (quoting S.C. Code. Ann. § 62-5-425) (emphasis added).)[6] Nevertheless,

---

[6] Indeed, the applicable, regional POMS provision advises adjudicators, based on South Carolina law, to "<u>assume</u> that the funds in a conservatorship account can be made available for the support and maintenance of the SSI claimant . . . and is a resource." POMS SI ATL 01140.215(A)(7) (emphasis added). Although Plaintiff contends that, "because South Carolina law was changed," adjudicators "'should obtain the court order granting the conservatorship to check for any restrictions on the disbursement of the assets'" (Docket Entry 12 at 2 (quoting POMS PS 17-119(2)(South Carolina))), that provision actually states that:

> "[b]eginning January 1, 2019, a guardian serving as a fiduciary[] is obligated to apply the money for the benefit of the minor/incapacitated person, but the court must explicitly set forth the rights and powers vested in the conservator . . . . Thus, in South Carolina, <u>SSA may currently assume that the funds in a conservatorship account can be made available for the support and maintenance of the SSI claimant</u> . . .; [h]owever, beginning in January 2019, SSA should obtain the court order granting the conservatorship to check for any restrictions on the disbursement of the assets . . . ."

Plaintiff contends that "the Probate Court's 'restrictive language' prohibit[ing] '*any withdrawal from the accounts*' . . . [constituted] 'evidence to the contrary' rebut[ting] the 'assumption of availability for support and maintenance.'" (Id. (quoting Tr. 61 (emphasis added by Plaintiff), and POMS SI 01140.215(B)(1), (2)).) In Plaintiff's view, "'[o]nce [she] rebutted the presumption in this way, the onus was on the SSA to show that [s]he still had access to the funds.'" (Id. at 12-13 (quoting White v. Apfel, 167 F.3d 369, 376 (7th Cir. 1999)).)

The Court should find that Plaintiff's evidence did not rebut the presumption that the funds in the restricted account (including the CD) remained available for J.M.S.'s support and maintenance. The Probate Court's order approving J.M.S.'s settlement provided only that, "[Plaintiff as] Conservator shall hold and maintain all proceeds for the benefit of [J.M.S.] until [he] attains the age of majority" (Tr. 59 (emphasis added)), and that court's order appointing Plaintiff as Conservator merely stated that Plaintiff "shall expend the assets of [J.M.S.] only pursuant to court order" (Tr. 60 (emphasis added)). Similarly, the Restricted Account Agreement provided "that any withdrawal from the account[] shall be allowed only upon certified Order of the Probate Court authorizing

POMS PS 17-119(2) (emphasis added). Thus, notwithstanding the change in South Carolina's conservatorship law beginning January 1, 2019, adjudicators could continue to assume that funds in conservatorship accounts constitute a countable resource but should check the court's order for restrictions on disbursements. The Appeals Council's decision complies with this provision. (See Tr. 6-7.)

22

a specific withdrawal for a specific amount at a specific time or pursuant to a budget which has been pre-approved by the [Probate] Court." (Tr. 61 (emphasis added).) None of those orders restricted the purpose for which Plaintiff could petition the Probate Court for withdrawal of funds, or otherwise prohibited Plaintiff from obtaining an order from the Probate Court to expend funds from the restricted account (including the CD) for J.M.S.'s support and maintenance. (See Tr. 59-61.) Additionally, the fact that Plaintiff could have sought approval from the Probate Court of a "budget" for withdrawals (Tr. 61) further supports the conclusion that the funds remained available for J.M.S.'s support and maintenance, see Frerks by Frerks v. Shalala, 848 F. Supp. 340, 349 (E.D.N.Y. Mar. 28, 1994) (unpublished) (affirming Commissioner's decision that funds in guardianship account qualified as countable resource where surrogate court "allowed disbursements of $700 per month from one of the accounts to be applied toward [the minor claimant's] support and education"), aff'd, 52 F.3d 412 (2d Cir. 1995).

Moreover, even if the Court found that the language in the Restricted Account Agreement constituted "evidence to the contrary" under POMS SI 01140.215(B)(2), thus overcoming the presumption in POMS SI 01140.215(B)(2) that the funds in the restricted account (including the CD) remained available for J.M.S.'s support and maintenance, the SSA has met its burden of demonstrating that

23

Plaintiff "still had access to the funds," <u>White</u>, 167 F.3d at 376.
In that regard, the POMS advises as follows:

> Denial by the court of a request for withdrawal of funds does **not** necessarily mean that funds in the account are unavailable for the individual's support and maintenance. If the court approves requests to withdraw funds in order to provide support and maintenance, and only disapproves requests for non-essential items, the funds are considered available and a resource for SSI purposes. <u>The [Field Office] adjudicator should review the history of petitions for (and approvals and denials of) withdrawal of funds</u>. If a denial by the court appears to be an exception rather than the rule, the funds may be determined to be a resource for SSI purposes.

POMS SI 01140.1215(B)(3) (bolding in original) (underscoring added).

Here, in accordance with that POMS provision, the Appeals Council considered the three petitions filed by Plaintiff for access to funds to purchase a computer for J.M.S. (<u>see</u> Tr. 63), to transfer $10,000.00 to a CD (under the same restrictions as the funds in the restricted account) (<u>see</u> Tr. 64), and to purchase a bubble mattress for J.M.S. (<u>see</u> Tr. 65). (<u>See</u> Tr. 7.) As the Appeals Council noted (<u>see</u> <u>id.</u>), the Probate Court granted all three petitions <u>on the day Plaintiff submitted them</u> (<u>see</u> Tr. 63-65). Significantly, the record does not contain <u>any</u> petitions submitted by Plaintiff and approved by the Probate Court any later than the day on which Plaintiff submitted the petition, let alone any petitions <u>denied</u> by the Probate Court. Under those circumstances, a statement from a <u>different</u> judge of the Probate

24

Court, i.e., not the judge who approved J.M.S.'s minor settlement (see Tr. 59), established the conservatorship (see Tr. 60), approved the Restricted Account Agreement (see Tr. 62), and approved all three of Plaintiff's petitions for expenditures on the day of submission (see Tr. 63-65), that the process of petition approval "may take up to 30 days" (Tr. 124 (emphasis added))[7] does not undermine the substantial evidence upon which the Appeals Council relied in finding the funds in the restricted account qualified as a liquid resource (see Tr. 7).

Plaintiff attempts to avoid the impact of those petitions by pointing out that "there [wa]s no 'history of petitions' for withdrawal from the CD" (Docket Entry 9 at 13 (emphasis added) (quoting POMS SI 01140.215(B)(3))), because the 'history of petitions' related to [J.M.S.]'s [restricted] account" (id. (citing Tr. 63-65)). As the Commissioner points out, however, "the funds in the [CD] and the [restricted] account were subject to the same . . . requirement" that Plaintiff obtain approval from the Probate Court before expending the funds and, thus, "all withdrawals [we]re equally relevant to whether the [restricted] account [(including the CD)] constitute[d] a resource." (Docket

_____

[7] The regulatory definition of "[l]iquid resources" specifies that an individual must possess the ability to convert the resource to cash within 20 days, excluding certain nonwork days," 20 C.F.R. § 416.1201(b) (emphasis added), i.e., within 20 business days. The letter from the Probate Court judge describing the process of petitions for expenditures does not define the 30-day outer limit for petition approval to encompass only business days. (See Tr. 124.)

25

Entry 11 at 12 (citing POMS SI 01140.215(B)).)  Moreover, although
the record does not contain any petitions for expenditure of the
CD's funds, that necessarily means the record also lacks any
evidence of <u>denials</u> of such petitions by the Probate Court.

Moreover, Plaintiff's reliance on <u>Allen</u> does not aid her
cause.  (<u>See</u> Docket Entry 9 at 13 (quoting language in <u>Allen</u> that
CD did not constitute countable resource, because "the chancery
court ha[d] complete discretion to deny a very reasonable request
for access to the settlement proceeds," <u>Allen</u>, 333 F. Supp. 3d at
1297).)  In that case, a minor claimant's mother placed the minor's
settlement proceeds in a CD, <u>see</u> <u>Allen</u>, 333 F. Supp. 3d at 1283,
and the chancery court had initially ordered that the minor
claimant's mother retain the settlement proceeds in the [CD] for
the <u>maintenance and education</u> of the minor [claimant,]" <u>id.</u>
(emphasis added).  Years later, the chancery court entered another
order dropping the "maintenance and education" language, and
ordering that the minor claimant's settlement proceeds "'[we]re to
remain [in a restricted CD] until further order of the [c]ourt,'"
<u>id.</u> at 1296.  The chancery court allowed the mother's petition for
emergency funds, <u>id.</u> at 1284, but denied a second petition for a
computer for the minor's educational needs, explaining that the
minor's mother bore the "responsibility to take care of [the minor]
with [the mother's] own resources, not with the settlement
proceeds," <u>id.</u> (internal quotation marks omitted).

In reversing the Commissioner's decision that the proceeds in the CD constituted a countable resource, the court emphasized three facts: (1) "[u]nder longstanding Mississippi law, access to funds set aside for a minor are severely restricted by the court practice and by statute," id. at 1294; see also id. at 1295 (citing POMS SI ATL01140.215's admonition that, "[b]ased on Mississippi law, do not assume the funds in a conservatorship account are available for the support and maintenance of the SSI claimant" (emphasis added)), (2) "the ALJ made the faulty assumption that the settlement proceeds in the [CD] were available for [the minor claimant's] support and maintenance based on the [chancery court's initial order]," id. at 1296 (some brackets and internal quotation marks omitted), and "fail[ed] to consider the effect of [the chancery court's later order which did not include the maintenance and education language]," id., and (3) "the chancery court's miserly handling of requests by [the minor claimant's mother] to access the funds [wa]s evidence that [the CD] was not intended or allowed by the court to be used as a resource for [the minor claimant's] ordinary maintenance and support," id. at 1297 (italics in original).

None of those facts exists in the instant case: (1) under South Carolina law, adjudicators can assume funds in a conservatorship account remain available for a minor claimant's support and maintenance, see POMS SI ATL 01140.215(A)(7); see also POMS PS 17-119(2); (2) the Appeals Council properly considered the

27

language in the Restricted Account Agreement, which did not expressly prohibit expenditures for J.M.S.'s support and maintenance (see Tr. 6-7; see also Tr. 61); and (3) the Probate Court did not deny any of Plaintiff's petitions for expenditures from the restricted account (see Tr. 63-65). Accordingly, no evidence exists on this record that the Probate Court had "complete discretion to deny a very reasonable request for access to the settlement proceeds," Allen, 333 F. Supp. 3d at 1297.

Plaintiff's citation of White fares no better. (See Docket Entry 9 at 12-13; see also Docket Entry 12 at 3.) In that case, the probate court appointed the plaintiff as conservator of her minor son's settlement proceeds in a restricted trust, and "stressed to [the plaintiff] that she remained primarily responsible for [the minor claimant]'s needs, and that the trust was to remain untouched until [he] reached the age of eighteen." White, 167 F.3d at 370 (emphasis added). After the SSA discovered the trust and terminated the minor claimant's SSI benefits, the plaintiff petitioned the probate court "to release $500 per month for [the minor claimant]'s support and maintenance, for both current support and support retroactive to the date of the personal injury settlement," as well as "access to part of the trust for use as an emergency fund," asserting "that the release of funds would be in [the minor claimant]'s best interest." Id. at 371. "The probate court summarily denied th[at] petition . . . ." Id. The

28

ALJ found that the funds in trust constituted a countable resource, because he "did not know how forcefully th[e petition] was pursued in the [probate] court[]," as well as "that a reworded petition, perhaps a more narrow one, not seeking access to an emergency fund, might be granted by the probate court." Id. (internal quotation marks omitted). The Appeals Council agreed, noting that the plaintiff lacked "evidence proving that the probate court would not approve a request that asks for withdrawals for current support and maintenance only." Id. (brackets omitted). Despite affidavits indicating that the probate court required petitioners to appear with counsel, and that the plaintiff could not afford to hire counsel, the Appeals Council ruled that the plaintiff's "inability to petition the [] probate court due to her financial circumstances and the requirement that she be represented by counsel did not bear on the issue of her legal right to do so." Id. at 372 (emphasis and internal quotation marks omitted). The district court, in upholding the Commissioner's decision "surmised that the probate court had rejected the petition because the amount sought was too great, because [the minor claimant] had already been provided for during the period for which retroactive benefits were sought, and because [the plaintiff] sought access to an emergency fund," and deemed the plaintiff's petition a "facially unreasonable request." Id. at 373.

29

The United States Court of Appeals for the Seventh Circuit reversed, "conclud[ing] that [the plaintiff] presented evidence contradicting the presumption that the funds in the conservatorship account [we]re available for [the minor claimant]'s care" by showing "that she requested a release of funds due to changed circumstances, and that request was denied." Id. at 375. The court continued:

> Once [the plaintiff] rebutted the presumption in this way, the onus was on the SSA to show that she still had access to the funds, notwithstanding the probate court's denial of the petition. The SSA could have met this burden, for example, by showing that as a matter of Missouri law, [the plaintiff] framed her petition incorrectly, or that the probate court necessarily abused its discretion in refusing her petition. <u>But mere speculation that the probate court might have ruled differently if presented with another request is not enough and that is all the SSA has provided in this case</u>. . . . Denial of a valid, good faith petition rebuts the presumption and requires the SSA to show that the probate court, in effect, committed reversible error when it denied the petition.

Id. at 376 (emphasis added).

As the foregoing summary makes clear, three key facts in White drove the court's determination that the trust proceeds did not qualify as a countable resource: (1) the probate court's denial of the plaintiff's good faith petition for support and maintenance funds, (2) the SSA's speculation that the probate court would approve a differently-worded petition, and (3) the plaintiff's lack of access to re-petition the probate court due to her inability to retain required counsel. Conversely, here, the probate court

30

approved <u>all</u> of Plaintiff's petitions (<u>see</u> Tr. 63-65) (such that neither the ALJ nor the Appeals Council engaged in any speculation regarding which petitions the Probate Court might have approved), and no evidence exists that Plaintiff encountered any difficulties filing petitions with the Probate Court. Accordingly, <u>White</u> simply does not support Plaintiff's arguments.

As the foregoing analysis shows, the Appeals Council supported with substantial evidence its decision that the funds in the restricted account (including the CD) constituted a countable, excess resource rendering J.M.S. ineligible for CSSI benefits.

### IV. CONCLUSION

Plaintiff has not established grounds for remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 25, 2023

31